for Isidor Wormser, Sr., that he, said counsel, advised that under the agreement Isidor Wormser, Sr., was entitled to the entire property of which Simon Wormser died seised and possessed. The appraiser bases his allowance of $250,000 for a compromise of this claim upon this evidence on the advice given by the attorney as to the merits of the claim. The appeal of the comptroller relates to the allowance of this last-mentioned sum by the appraiser; he claiming that no such sum has been paid, nor has any agreement been made to pay the same, nor has it been in any way recognized as a valid claim by the next of kin. The only persons affected by the order appealed from are the children of decedent. Only one of them gave testimony before the appraiser, and he, instead of urging that the claim was bona fide and valid, alleges, in express terms, that the property in question belonged to his father, by virtue of the co-partnership agreement, and that upon the death of his father the share to which the latter was entitled in the assets of the firm of which he was a member, and his individual assets, were distributed among his children. The appeal on behalf of the comptroller to the allowance of any sum in compromise of this claim is sustained, and the objection of the next of kin to the taxability of any portion of the estate is overruled.

Among the deductions allowed by the appraiser from the value of the taxable property was the sum of $150,000, being one-half of the sum claimed by the Union Pacific Railroad in an action pending against the firm in the supreme court. It was proper to withhold this sum from appraisal and taxation during the pendency of the suit, but it would have been better practice that the order determining the tax should have contained an appropriate recital to the effect that the determination of the taxability of this sum is suspended until the disposition of the litigation.

The application to remit the penalty on the tax herein is denied, so far as it concerns such part of the tax as has already been fixed by the order which has been appealed from and paid, as no sufficient cause is shown to warrant my granting it. Transfer Tax Law, § 223. As to the tax upon the amount which has been added to the taxable value of the estate by my reversing the ruling of the appraiser in respect to the deduction made by him on account of the alleged claim of intestate's brother, it seems to me but fair to remit the penalty for the period intermediate the submission of this matter to my predecessor and the entry of the order upon this decision. As to the time previous to such period, I am, for the reason stated for my refusal to remit the penalty on the portion of the tax paid, unable to relieve the estate from the penalty upon the tax on such added amount.

Appeals sustained.

(28 Misc. Rep. 611.)

In re BLAIR'S ESTATE.

(Surrogate's Court, New York County. July, 1899.)

1. REVERSAL OF DECREE PROBATING WILL—RIGHT OF EXECUTOR TO BE RECOMPENSED FOR DISBURSEMENTS.

Where the general term reverses the decree of the surrogate admitting a will to probate, and the case is taken by the executor named in such

will to the court of appeals, where the decision of the general term is sustained, the executor is entitled to be recompensed for his disbursements in properly conducting the litigation, notwithstanding he was personally interested in the result.

2. SAME—ALLOWANCE FOR PAYMENTS.

Where an executor of a will, who was unsuccessful in procuring its admission to probate, employed additional counsel to prosecute the case in the court of appeals, and gave his note for such services, which was not delivered until after the letters were revoked, such note does not constitute an actual payment, and is properly disallowed by the referee in passing on the allowance of payments made by such executor.

Proceedings for the settlement of the accounts of the acting executor of the estate of Lewis R. Blair, deceased. Report of referee confirmed.

James O'Neill, for accountant.

Porter & Kilvert, for contestant.

FITZGERALD, S. The decedent died in 1893, leaving a paper purporting to be his will. This paper was offered for probate and admitted after contest by relatives representing two-thirds of the estate, who successfully appealed to the general term of the supreme court, where the decree of the surrogate was reversed. An appeal was taken to the court of appeals by the executor in his official capacity, and also by him individually, with other beneficiaries under the will. The decision of the general term was sustained. Meanwhile the executor named in the will (the present accountant) had procured letters, which were revoked in April, 1897, whereupon letters of administration were issued. The person named in the will as executor, and who had, up to the decision of the court of appeals, administered the estate, rendered an account, to which objections were filed, and a reference of the issues raised thereby ordered. In conducting the litigation over the probate of the will, the person named as executor engaged counsel, and upon the argument of the appeal in the court of appeals engaged eminent additional counsel. The present contest relates to the propriety of the payments then made by a person named as executor in a will, who is unsuccessful in procuring its admission to probate, and who is himself largely interested in the result. The duty of executors thus situated has been the subject of consideration by the general term of this department. In Re Hutchison, 84 Hun, 563, 32 N. Y. Supp. 869, as in the case at bar, the executor was individually interested in the result. The court held that nevertheless the trustee was entitled to be reimbursed for his expenses for counsel in procuring an interpretation of the will. The questions litigated were unsettled and novel, and the judge writing the opinion of the court quoted in support of the decision the following language from the case of Austin v. Oakes, 117 N. Y. 588, 23 N. E. 194: "Upon this question the trial court and the general term have differed with so much of sensible and pertinent reasoning as to make a final determination not altogether easy." The general term, in the case cited, refers to this uncertainty of the law in support of its conclusion. The point upon which the probate was opposed was lack of due execution. The will was sustained by the surrogate. While this decree was reversed at general term, yet Judge Parker, in his opinion, referred to the question as one "which

appeared never to have been before presented or considered." The
referee allowed the executor what he considered the reasonable value
of the services rendered by counsel up to the decision of the appeal
to the general term, but disallowed the executor everything claimed
for the services of counsel (including the additional counsel on the
appeal to the court of appeals), for the reason that in his opinion "the
executor's duty to the legatees mentioned in the will, who would
take nothing unless the will was sustained, terminated with the judg-
ment of the general term, and that, if such an appeal was taken, the
costs and expenses thereof must be borne by him and the other parties
interested in sustaining the will." I differ from him in this con-
clusion. For the defective execution the testator was responsible.
The court of first impression decided in favor of probate, and the ap-
pellate court expressly noted that the question is novel. In my
opinion, it was the duty of the executor to have the matter properly
presented to the court of last resort, and he should be recompensed
for his disbursements in that behalf. And this, notwithstanding he
was personally interested in the result. This last circumstance
should, however, be taken into consideration in arriving at the
amount to be allowed. Of the $4,500 allowed for legal services ren-
dered by Mr. O'Neill, he has been paid in cash the sum of $2,150 only;
leaving a balance of $2,350, included in a note of $4,850 given by the
executor, and indorsed by his wife, to Mr. O'Neill. This note was
not delivered until after the letters were revoked, and the contestants
claim it should not be allowed, because it does not constitute an ac-
tual payment. I concur with the views of the referee in this respect.
Unless the parties can agree upon a sum to be allowed for legal ex-
penses on the appeal to the court of appeals, I will remit the proceed-
ing to the referee for his judgment on this point. In all other re-
spects the report of the referee is confirmed. Decree accordingly.

---

(28 Misc. Rep. 468.)

### In re BRANDRETH'S ESTATE.

(Surrogate's Court, Westchester County. July, 1899.)

1. TRANSFER TAX—GIFT OF STOCKS IN CONTEMPLATION OF DEATH.
     A gift by a father to his daughters of shares of stock in a corporation,
     accompanied by the execution by the daughters of an irrevocable power
     of attorney to their father, authorizing him to vote the stock, and to
     receive the dividends thereon during his life, is a transfer in contempla-
     tion of the death of the donor, within the terms of the transfer tax law
     (Laws 1896, c. 908, § 220, subd. 3), and subject to the tax imposed by such
     act.

2. SAME—TRUST AGREEMENT.
     A trust agreement entered into between the father, daughters, and other
     stockholders subsequent to the gift by which the stock of the corpora-
     tion was transferred to trustees, for the purpose of preventing its alien-
     ation, did not affect the conditions of the gift, or abrogate the power of
     attorney so far as it postponed the beneficial enjoyment of the gift by
     the donees until the father's death.

3. SAME—VALUATION OF STOCK OF CORPORATION.
     In valuing shares of stock in a corporation for the purpose of the trans-
     fer tax law, where the stock has no market value, its actual value may be
     ascertained by taking into consideration the property and earning capacity
     of the corporation; and, in connection with its good will, the value of